IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

KEVIN E.D. BILLS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C09-0088

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*   *Bills' Education and Employment Background*. . . . . . . . . . . . . . . 5
    *B.*   *Administrative Hearing Testimony*. . . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Bill's Testimony*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert Testimony*. . . . . . . . . . . . . . . . . . . . 7
    *C.*   *Bills' Medical History*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    *CONCLUSIONS OF LAW*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A.*   *ALJ's Disability Determination*. . . . . . . . . . . . . . . . . . . . . . 11
    *B.*   *Objections Raised By Claimant*. . . . . . . . . . . . . . . . . . . . . . 13
        *1.*    *Medical Opinion Evidence*. . . . . . . . . . . . . . . . . . . . . 14
        *2.*    *Credibility Determination*. . . . . . . . . . . . . . . . . . . . . 16

VI.  *CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 2) filed by Plaintiff Kevin E.D. Bills on June 29, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Bills asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Bills requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On November 16, 2005, Bills applied for both disability insurance benefits and SSI benefits.[1] In his applications, Bills alleged an inability to work since January 15, 2005 due to injuries from a car accident, including back pain and memory problems. Bills' applications were denied on February 20, 2006. On October 18, 2006, Bills' applications were denied on reconsideration. On November 14, 2006, Bills requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 15, 2007, Bills appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing. Bills, Jessica Riekena, Bills' girlfriend, and vocational expert G. Brian Paprocki testified at the hearing. In a decision dated April 30, 2008, the ALJ denied Bills' claims. The ALJ determined that Bills was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing his past relevant work as a housekeeping cleaner and hand packager. Bills appealed the ALJ's decision. On January 23, 2009, the Appeals Council denied Bills' request for review. On April 30, 2009, after considering additional evidence, the Appeals Council again denied

---

[1] The record also contains applications for disability benefits and SSI benefits, dated January 20, 2005. Bills' applications were initially denied on April 5, 2005. *See* Administrative Record at 41, 463. The applications were denied on reconsideration on May 23, 2005. *See* Administrative Record at 40, 457. Apparently, Bills chose not to pursue the January 2005 applications, and reapplied in November 2005. The record contains nothing further regarding the January 2005 applications.

Bills' request for review. Consequently, the ALJ's April 30, 2008 decision was adopted as the Commissioner's final decision.

On June 29, 2009, Bills filed this action for judicial review. The Commissioner filed an Answer on October 19, 2009. On February 18, 2010, Bills filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform his past relevant work as a housekeeping cleaner and hand packager.[2] On April 19, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 21, 2009, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th

---

[2] According to the Briefing Schedule (docket number 10) filed on October 20, 2009, Bills' brief was due by November 19, 2009. On February 17, 2010, Bills filed a Request for Permission to File Brief Outside Time Limits (docket number 13) for various reasons. Bills' brief was attached to the Request for Permission. *See* docket number 13-1. On February 18, 2010, the Court granted Bills' request and docketed Bills' brief. *See* docket number 14.

3

Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole."

*Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Bills' Education and Employment Background

Bills was born in 1969. It is unclear whether he is a high school graduate or earned a GED. Nevertheless, he attended Kirkwood Community College from 1993 to 1995. At Kirkwood, he took courses in small engine repair. He did not earn a degree or certificate from Kirkwood.

The record contains a detailed earnings report for Bills. The report covers Bills' employment history from 1990 to 2006. According to the report, Bills had a range of earnings from 1990 to 2006, with a low of $1,657.00 (2002) and a high of $17,641.77 (1998). Bills had no earnings from 1992 to 1995, and no earnings in 2006.

### B. Administrative Hearing Testimony

#### 1. Bill's Testimony

At the administrative hearing, Bills explained that in 1991, he was in an accident that involved a car striking him from behind. As a result of being struck by the car, Bills was hospitalized for two months and in a coma for 14 days. He suffered a brain hematoma, severe trauma to his back, and a broken leg.

Bills testified that he is unable to work as a result of complications from the 1991 accident. Specifically, Bills stated that his balance and ability to stand for extended periods of time is impaired. According to Bills, he tried to work in 2007, cleaning bathrooms and stocking at a Buffalo Wild Wings restaurant, but had to quit that job because he "couldn't

handle the bending up and down."[3] Bills also testified that as a result of his inability to hold a job, he suffers from depression.

The ALJ questioned Bills regarding his functional abilities. Bills testified that he could sit for 45 minutes before needing to get up and walk around. He also stated that he could walk for about one hour before needing a break. When asked how much he could lift two to three times per hour, Bills replied about 20 pounds.

Next, the ALJ asked Bills to describe his back pain:

> A: It's in my lower back and it goes up my spine at times, but it's usually my lower back when I sit.
> Q: Is there anything that makes it worse or better?
> A: Laying down flat makes it a little bit better, but I've -- and doing some walking at times makes it feel a little bit better, but usually just a constant ache.

(Administrative Record at 507.) The ALJ also asked Bills to describe a typical day:

> Q: Describe your average day. What do you do all day?
> A: I get up, take a shower, find something to eat, usually sit around, watch TV if I don't go out and look for a job. Most of the time I go out and look for a job.
> Q: How much time during the day would you spend out looking for a job?
> A: I'd say four to six hours. . . .
> Q: Do they do any -- do you do any chores around the house, cleaning, cooking, laundry, mowing the yard?
> A: I do my own cooking, I do my own laundry[.] . . .
> Q: What do you do to keep yourself entertained?
> A: I play on the computer, watch videos, put puzzles together. . . .
> Q: How about socializing? Do you get out of the house much, spend time with others?
> A: Yeah, I get out quite a bit with my girlfriend, and we try to go do things together.
> Q: Like what sorts of things, go to football games, what?
> A: We go to the movies and go walk around the mall, shopping, and go to Wal-Mart.

---

[3] *See* Administrative Record at 497.

(Administrative Record at 508-09.)

### 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert G. Brian Paprocki with a hypothetical for an individual who is able to:

> lift 20 pounds occasionally, 10 pounds frequently, he [or she] could only occasionally balance, stoop, crouch, kneel, crawl, climb. I'd limit [the individual] to simple, routine, repetitive work, no contact with the public, regular pace.

(Administrative Record at 516.) The vocational expert testified that under such limitations, Bills could perform his past work as a housekeeping cleaner and hand packager. The ALJ also asked the vocational expert whether his answer would change if the individual needed two or more unscheduled breaks per day, and would work at a slow pace for up to one-third of a workday. The vocational expert responded that under such limitations, Bills would be precluded from competitive employment.

### C. *Bills' Medical History*

On December 28, 2004 and January 13, 2005, Bills met with Dr. Frank S. Gersh, Ph.D., for a neuropsychological examination. Upon questioning, Bills reported that since his 1991 traffic accident, where he was hit from behind by a car traveling 55 miles per hour, he suffered from difficulties with short term memory, concentration, and problem solving.[4] Bills also reported difficulties with anger management, sleep, and depression. After examination, Dr. Gersh diagnosed Bills with mood disorder secondary to closed head injury, cognitive disorder secondary to closed head injury with evidence of significantly impaired concentration and mental processing speed. Dr. Gersh also opined that Bills had probable developmental learning disabilities in reading, writing, and arithmetic. Dr. Gersh assessed Bills a GAF score of 40. Dr. Gersh recommended a psychiatric referral for treatment of depression and vocational counseling as care for his health issues.

---

[4] As previously discussed in this Ruling, Bills suffered a brain hematoma, severe back trauma, and a broken leg as a result of being struck by the car. Bills was hospitalized for two months and in a coma for 14 days following the accident.

On March 4, 2005, Dr. John C. Garfield, Ph.D., reviewed Bills' medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Bills. Dr. Garfield diagnosed Bills with psychological abnormalities, including slight memory impairment, change in personality, mood disturbance, and loss of measured intellectual ability. Dr. Garfield determined that Bills had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Garfield determined that Bills was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Garfield concluded that "[a]fter assessing all of the evidence in file, . . . [Bills] is capable, although moderately restricted, of engaging in simple, routine, unskilled competitive employment[.]"[5]

On March 31, 2005, Dr. J.D. Wilson, M.D., reviewed Bills' medical records and provided DDS with a physical RFC assessment. Dr. Wilson determined that Bills could: (1) occasionally lift and/or carry 45 pounds, (2) frequently lift and/or carry 30 pounds, (3) stand and/or walk with normal breaks for at least six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Bills could

---

[5] *See* Administrative Record at 405.

occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations.

On January 20, 2006, Dr. Dee E. Wright, Ph.D., reviewed Bills' medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Bills. Dr. Wright diagnosed Bills with psychological abnormalities, including memory impairment, change in personality, and mood disturbance. Dr. Wright also diagnosed Bills with depressive syndrome characterized by sleep disturbance, decreased energy, and difficulty concentrating or thinking. Dr. Wright determined that Bills had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Bills was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Wright concluded that:

> In examining the medical evidence of record[, Bills] does have cognitive limitations of function. [Bills] does exhibit variable sustained attention and concentration. [Bills] would have difficulty performing any complex cognitive activity that demanded prolonged attention to minute details and rapid shifts in alternating attention. Despite these limitations, [Bills] is currently able to sustain sufficient concentration and attention to perform a range of non-complex, repetitive and routine cognitive activities without significant limitation of function.

> The evidence in file would support limitations of function with social interaction when [Bills] is unduly stressed. Given [Bills'] history and current presentation he would function best in settings where he were not required to have frequent stressful contact with large numbers of unfamiliar individuals. In a low stress and predictable environment, however, [Bills] can sustain short-lived superficial interaction with others when it is in his perceived interest to do so.
>
> The evidence in file does not indicate [Bills] is seriously limited in his self-care or other activities of daily living from a psychological perspective.

(Administrative Record at 326.)

On January 26, 2006, at the request of DDS, Bills met with Dr. Joseph Galles, M.D., for a consultative examination. Bills informed Dr. Galles that since the 1991 car accident, he suffered from back pain and knee pain. Bills also indicated that he had been using a cane for about 1.5 years to help him walk. Dr. Galles noted that Bills takes aspirin or ibuprofen for pain relief. Upon examination, Dr. Galles found that Bills had "some significant deformity of the right lower leg."[6] Dr. Galles concluded that Bills "disability appears to be some weakness in his extremities as well as memory impairment."[7]

On February 19, 2006, a medical doctor[8] reviewed Bills' medical records and provided DDS with a physical RFC assessment. The doctor determined that Bills could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. The doctor also determined that Bills could occasionally climb, balance, stoop, kneel, crouch, and crawl. The doctor found no

---

[6] *See* Administrative Record at 321.

[7] *Id.*

[8] The non-examining DDS doctor's name is illegible; thus, the Court will refer to him or her as "doctor." *See* Administrative Record at 319.

manipulative, visual, communicative, or environmental limitations. The doctor concluded that:

> The credibility of [Bills'] allegations is significantly eroded by [the] fact that he has not sought treatment for his alleged pain syndrome [and] admits to taking no medication for pain. His [activities of daily living] reflect the retained ability to function as outlined.

(Administrative Record at 314.)

On July 24, 2006, Bills was referred by DDS to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. Bills reported to Dr. Stientjes that he suffers from depression, memory problems, significant pain, and difficulty with anger. Upon examination, Dr. Stientjes diagnosed Bills with major depressive disorder, cognitive disorder, some mildly slowed processes, but memory appears intact, borderline personality disorder, and back and leg problems with complaints of chronic pain. Dr. Stientjes opined that Bills:

> can understand and remember simple oral and written directions. Based upon observation, he should also be able to carry out instructions from one day to the next. He complained of memory difficulties, but performed adequately in this setting. Interactions with others likely are somewhat conflicted. . . .

(Administrative Record at 290.)

### V. CONCLUSIONS OF LAW

#### A. ALJ's Disability Determination

The ALJ determined that Bills is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings,

> (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Bills had not engaged in substantial gainful activity since January 15, 2005. At the second step, the ALJ concluded from the medical evidence that Bills had the following severe combination of impairments: depression, degenerative disc disease, organic mental disorder, and borderline personality disorder. At the third step, the ALJ found that Bills did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1,

Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Bills' RFC as follows:

> [Bills] has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; and only occasionally balance, stoop, kneel, crouch, crawl, and climb. The individual could perform simple, routine, repetitive work involving no contact with the public at no more than a regular pace.

(Administrative Record at 32.) Also at the fourth step, the ALJ determined that Bills was functionally capable of performing his past relevant work as a housekeeping cleaner and hand packager. Therefore, the ALJ concluded that Bills was not disabled.

### B. Objections Raised By Claimant

Bills provided the Court with an incomplete brief. In the "Table of Contents" of Bills' brief, under the heading "Argument," Bills presents the following:

I. The Decision of the Commissioner was not supported by Substantial Evidence.

    A. Physician's Opinions
    B. Vocational Opinions

II. The Commissioner Erred in Concluding that Plaintiff could Do Past Relevant Work

III. Plaintiff[']s Unsuccessful Attempts to Work Demonstrate that he Could not Return to Past Relevant Work

IV. The Commissioner Erred in Improperly Ignoring the Commissioner's Vocational Expert and the Plaintiff's Complaints of Pain

V. The Court Should Reverse and Award Benefits

*See* Bills' Brief (docket number 13-1) at 2. Bills' brief offers no discussion of sections I.B., II, III, IV, or V. As for section I.A., Bills generally states:

> In the instant case, the Commissioner improperly failed to credit well documented findings of both treating and consulting

> physicians and/or counselors and misconstrued uncontradicted facts. The Commissioner's decision was therefore not supported by substantial evidence.

*See* Bills' Brief at 7. Bills fails, however, to direct the Court to any documents in the record from treating or consulting sources to support his argument. Again, Bills argues generally that:

> In this case, the opinions of the consulting physicians provided little to no contradiction to the treating physicians, and therefore do not provide substantial evidence for concluding that [Bills] is unable to work.

*Id.* Similarly, Bills fails to direct the Court to any documents in the record to support this argument. Bills' brief contains no further argument, and as previously stated, skips sections I.B., II, III, IV, and V, even though such sections are included in the "Table of Contents" of the brief. Therefore, given the limited briefing by Bills, the Court will review the ALJ's decision with respect to his evaluation of the medical opinion evidence and Bills' credibility.

### 1. *Medical Opinion Evidence*

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013

(8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

Having thoroughly reviewed the entire record, the Court finds that the ALJ fully considered and addressed the medical opinion evidence of Bills' treating, examining, and non-examining physicians.[9] The Court further determines that the ALJ properly weighed the medical opinion evidence and adequately explained his reasons for the weight given to the medical opinion evidence.[10] *See Tilley*, 580 F.3d at 680. Specifically, the ALJ found the opinions of the treating, examining, and consultative sources to be consistent with their

---

[9] *See* Administrative Record at 34-37.

[10] *Id.*

examinations and treatment of Bills.[11] The ALJ also properly incorporated restrictions suggested by the treating, examining, and consultative sources into Bills' RFC.[12] Thus, the ALJ appropriately determined that the medical opinion evidence in the record was consistent with substantial evidence on the record. *See Travis*, 477 F.3d at 1041. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Credibility Determination

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also*

---

[11] *See* Administrative Record at 36-37.

[12] *Id.* at 37.

*Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> After considering the evidence of record, the undersigned finds [Bills'] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Bills'] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible. As mentioned earlier, the record reflects work activity after the alleged onset date. Although the work activity did not constitute disqualifying substantial gainful activity, it indicates daily activities have, at least at times, been somewhat greater than generally reported. At one point or another in the record,

> either in forms completed in connection with the application, in medical records, or in testimony, [Bills] reported caring for personal needs, caring for pets, preparing partial meals, doing laundry, washing dishes, watching television, and using a computer, activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The record reflects [Bills] was not compliant with taking prescribed medications, suggesting symptoms may not have been as limiting as alleged. [Bills] has not taken any narcotic based pain relieving medications despite his allegation of quite limiting pain. . . . [Bills] admitted to certain abilities which provided support for part of the residual functional capacity conclusion in this decision. Therefore, the undersigned finds [Bills] has been less than credible regarding his allegation of total disability.

(Administrative Record at 36.)

It is clear from the ALJ's decision that he considered and discussed Bills' treatment history, medical history, functional restrictions, activities of daily living, and use of medication in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Bills' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Bills' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical opinion evidence in the record, and properly determined Bills' credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 2) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 10th day of June, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA